```
                    UNITED STATES DISTRICT COURT
                            FOR THE
                       DISTRICT OF VERMONT
```

Sean Buckner,                   :
                                :
        Plaintiff,               :
                                :
        v.                       :    File No. 1:12-cv-90-jgm
                                :
Peter Shumlin, William           :
Sorrell, Keith W. Flynn,         :
Robert D. Ide, Howard A.         :
Kalfus, Robert Appel,            :
Joseph Bahr, Nelson              :
Campbell, Paul Erlbaum,          :
Tom Marsh, Chief Steven          :
Soares, Erik McNeice,            :
William Jenkins, James           :
Beraldi, Linda Shedd,            :
Richard Slusser, John            :
Zonay, Glenn Cutting,            :
Hunter Reiseberg,                :
                                :
        Defendants.              :

<u>OPINION AND ORDER</u>
(Docs. 5, 6, 12, 15, 36, 37, 42)

Plaintiff Sean Buckner, proceeding *pro se*, brings this action claiming he has been the victim of racial profiling, and that public officials have conspired to violate his rights. Pending before the Court are Defendants' motions to dismiss, as well as Buckner's motion to expedite trial, motion for a subpoena, and motion to amend his Complaint. For the reasons set forth below, the motions to dismiss are GRANTED, Buckner's motion to amend his Complaint is GRANTED in part and DENIED in part, and his remaining motions are DENIED.

## Factual Background

For purposes of the pending motions, the facts alleged in the Complaint will be accepted as true. On May 17, 2011, Buckner stopped his vehicle on the shoulder of Interstate 91 due to "an emergency condition." (Doc. 4 at 8.) Vermont State Trooper Erik McNiece subsequently pulled up behind Buckner's vehicle and performed a routine license plate check before exiting his cruiser. Trooper McNiece then requested Buckner's license, registration, and insurance information. He also asked for identification from both Buckner and his passenger, and inquired as to who owned the car.

Buckner is a black male. His passenger was a white female. The vehicle had North Carolina license plates. When Trooper McNiece asked for identification, Buckner informed him that he felt uncomfortable, and requested that another officer be present. Trooper McNiece reportedly told Buckner his behavior (visibly nervous, smoking a freshly-lit cigarette, asking for another officer to be present) was suspicious. Trooper McNiece ultimately returned the occupants' identification papers and "released" them. Id. at 4.

Buckner was unable to start his car due to a low battery, and a tow truck was called. Trooper McNiece subsequently contacted Windsor Police Sergeant James Beraldi to ask if

Sergeant Beraldi had any information about Buckner. Sergeant Beraldi responded that he knew of Buckner, and allegedly described him as "a crackhead." Id. at 9. Based upon this information, Trooper McNiece ordered an exterior dog sniff of the vehicle.

Trooper Richard Slusser arrived with a dog and a sniff was conducted. The dog did not indicate the presence of contraband in the vehicle. Trooper McNiece ultimately issued Buckner a written warning for lack of proof of insurance.

State Police Lieutenant William Jenkins later reviewed the "tape" of Buckner's interactions with Trooper McNiece, and found no wrongdoing by McNiece. Id. at 10. Lieutenant Jenkins also informed Buckner he must send in his proof of insurance, and that failure to do so would result in a ticket. Buckner allegedly "told Lieutenant William Jenkins that I would not send in proof of insurance and to send me the ticket because I will use that to take them to court." Id. Buckner reports he never received the ticket.

Buckner later filed a complaint with the Vermont Human Rights Commission ("VHRC"). VHRC investigator Nelson Campbell interviewed both Buckner and Sergeant Beraldi. Sergeant Beraldi allegedly told Campbell that he did not have any reason to suspect Buckner of being "a crackhead," and

3

according to the Complaint, the Town of Windsor now denies Sergeant Beraldi ever made such a characterization. Id.

The VHRC ruled against Buckner in a 3-0 vote. Buckner alleges that prior to the vote, he requested a recording of his interview with Campbell, as well as notes from Campbell's interview of Sergeant Beraldi. He claims the interview recording was not produced because, according to the VHRC, it was "'either erased or damaged'" when moved from one computer to another. Id. at 11.

Other state officials, including Vermont Department of Public Safety Commissioner Keith W. Flynn, Vermont Department of Motor Vehicles Commissioner Robert Ide, and Special Assistant Attorney General Howard A. Kalfus have allegedly declined to find that Buckner was "treated like a criminal." Id. Buckner claims these findings are evidence of "systemic oppression within the state government," and that he lives in "a state of apartheid in the State of Vermont." (Doc. 37-1 at 8.)

Buckner further claims that according to an "unconfirmed rumor," the Windsor Police Department was conspiring with the Vermont State Police a few months prior to the May 2011 incident "to for lack of better words 'get me.'" Id. Buckner reported this rumor to Windsor Town Manager Steven Cottrell and Windsor Police Chief Steven Soares who, together with

4

Sergeant Beraldi, allegedly "escorted [Buckner] out as if the complaint was frivolous." Id. at 12.

Buckner next alleges that he was "physically assaulted by the Town of Windsor on November 10, 2010," and that he was "coerced to do a body search by the Town of Windsor on November 10, 2010." Id. It is not clear whether this allegation is related to Buckner's other claims, or whether it constitutes an independent allegation.

Finally, Buckner complains about an incident involving a traffic stop in January 2008. While driving home on Interstate 91, he was allegedly stopped by Trooper McNiece for a routine license plate inspection. Trooper McNiece then arrested Buckner for driving under the influence of alcohol ("DUI"). Buckner contends that his breath alcohol content was .049, while the threshold for a DUI conviction in Vermont is .08. Although he was never convicted, Buckner reports "[t]he State of Vermont testified that my prior arrest for DUI was probable cause for further investigating me for illegal activity." Id. at 13. This latter allegation may relate to Buckner's subsequent interaction with Trooper McNiece in May 2011.

Buckner's Complaint asserts federal constitutional claims, as well as state law claims such as defamation, slander, and intentional infliction of emotional distress.

Buckner also asks the Court to initiate a Department of Justice investigation, and to declare Vermont's interstate highway rules, "exterior sniff law," and "Fair housing and Public Accommodations law" unconstitutional. Id. at 14. Other requested relief includes exemplary, actual, compensatory and statutory damages.

## Discussion

I. Motions to Dismiss

   A. Legal Standard

Pending before the Court are four motions to dismiss submitted by Defendants. Each of the four motions is filed under Federal Rule of Civil Procedure 12(b)(6), arguing that Buckner has failed to state a claim upon which relief may be granted.

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the Complaint as true and draw all reasonable inferences in the plaintiff's favor. Famous Horse Inc. v. 5th Ave. Photo Inc., 624 F.3d 106, 108 (2d Cir. 2010). However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual

matter . . . to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." Id. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 680.

In ruling on a motion to dismiss under Rule 12(b)(6), a district court must construe a *pro se* complaint liberally, see Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011), and interpret the claims as raising the strongest arguments that they suggest. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).

B.  Defendants Marsh, Soares, and Beraldi

The first motion to dismiss before the Court is that of Defendants Tom Marsh, Stephen Soares, and James Beraldi. (Doc. 12.) Marsh is being sued in his official capacity as Town Manager of the Town of Windsor. Soares is sued in his official capacity as the Windsor Chief of Police. Beraldi is

sued in his official capacity as a Sergeant in the Windsor Police Department.

These Defendants first argue the Complaint fails to allege that Town Manager Marsh and Police Chief Soares were personally involved in any unlawful conduct. With respect to Buckner's constitutional claims, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). If the defendant is a supervisor, personal involvement must be shown by evidence of direct participation in the challenged conduct, or by evidence of the official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003); see also Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004); Johnson v. Newburah Enlarged Sch. Dist., 239 F.3d 246, 254–55 (2d Cir. 2001). "The fact that [a defendant] was in a high position of authority is an insufficient basis for the

imposition of personal liability." Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989); see also Back, 365 F.3d at 127; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).

As to state law claims, "[u]nder the settled doctrine of *respondeat superior*, an employer or master is held vicariously liable for the tortious acts of an employee or servant committed during, or incidental to, the scope of employment." Brueckner v. Norwich Univ., 169 Vt. 118, 122-23, 730 A.2d 1086, 1090 (1999). For a claim under *respondeat superior* to succeed, "it is essential that there be a master servant relationship, and that the servant is subject to the master's control." Verrill v. Dewey, 130 Vt. 627, 635, 299 A.2d 182, 186 (1972).

The Complaint names Town Manager Marsh in the caption, and again as a Defendant being sued in his official capacity. However, Buckner does not allege any specific wrongdoing by Marsh. Nor is there any claim that Marsh supervised other Defendants. Furthermore, Buckner does not allege any sort of policy, custom, or deliberate indifference that might establish supervisor liability. The motion to dismiss with respect to Defendant Marsh is therefore GRANTED.

Police Chief Soares is alleged to have met with Buckner about the "unconfirmed rumor" that the Police Department and

9

the State Police were conspiring to "get" him. Soares is also alleged to have "escorted" Buckner out of the meeting "as if the complaint was frivolous." (Doc. 37-1 at 12.) Nothing in these allegations states a claim for relief. The Supreme Court has explained that a complaint must do more that infer "the mere possibility of misconduct." Iqbal, 556 U.S. at 679. Chief Soares' alleged action – dismissing an unconfirmed rumor of a conspiracy – does not support even an inference of misconduct. There is no claim that Chief Soares denied Buckner access to public officials, or that his actions violated Buckner's rights in any way. Nor is there a claim that Chief Soares bears responsibility as a supervisor for Sergeant Beraldi's alleged statements about Buckner's drug history. Accordingly, the motion to dismiss with respect to Soares is GRANTED.

Furthermore, because Marsh, Soares and Beraldi are being sued in their official capacities, the claims against them must be analyzed as claims against the Town of Windsor. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 165 (1985) (explaining that official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 690

n.55 (1978))). The Complaint must therefore satisfy the applicable standards for municipal liability.

"'Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort.'" Hayes v. Cnty. of Sullivan, 853 F. Supp. 2d 400, 438 (S.D.N.Y. 2012) (quoting Monell, 436 U.S. at 691). Specifically,

> [a] plaintiff may assert the existence of a municipal policy in one of four ways: (1) a formal policy officially endorsed by the municipality; (2) actions taken by the government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policy makers to train or supervise subordinates.

McLaurin v. New Rochelle Police Officers, 373 F. Supp. 2d 385, 399-400 (S.D.N.Y. 2005). A municipality may not be held liable for the actions of its employees on the basis of *respondeat superior*. See Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999).

Here, Buckner does not allege any Town of Windsor policy that led to a violation of his constitutional rights. Indeed, he makes no connection whatsoever between Town policymakers and his allegations of racial profiling. Nor does he allege a failure to train or supervise. His constitutional claims

against Marsh, Soares and Beraldi in their official capacities are therefore DISMISSED.

    C.   <u>Defendants Rieseberg and Cutting</u>

Defendants Hunter Reiseberg and Glenn Cutting present the same arguments in their motion to dismiss as those presented by Marsh, Soares, and Beraldi: lack of personal involvement and failure to plead municipal liability. (Doc. 15.) Rieseberg is sued in his official capacity as Town Manager of the Town of Hartford. Cutting is sued in his official capacity as Chief of Police for the Town of Hartford.

As with Defendant Marsh, there are no specific allegations of wrongdoing by either Rieseberg or Cutting. Both are named in the caption, and subsequently as Defendants, but there is no further reference to either in the Complaint. Nor is there any allegation to satisfy the requirements for a claim of municipal liability against the Town of Hartford. The motion to dismiss Defendants Rieseberg and Cutting is therefore GRANTED.[1]

    D.   <u>State Defendants</u>

The next motion before the Court is filed by Defendants Shumlin, Sorrell, Flynn, Ide, Appel, Bahr, Campbell, Erlbaum, McNiece, Jenkins, Slusser and Zonay (collectively "State

---

[1] The Court notes that in his proposed Amended Complaint, Buckner deletes any reference to Rieseberg and Cutting. (Doc. 37-1 at 2, 17.)

Defendants"). (Doc. 36.) The State Defendants assert that they have only been named, and served, in their official capacities. Consequently, their sole argument for dismissal is on the basis of Eleventh Amendment immunity from suit in federal court.

To the extent Buckner asserts constitutional claims against these Defendants in their official capacities, his claims for money damages are indeed barred by the Eleventh Amendment. See Graham, 473 U.S. at 169. The Eleventh Amendment generally provides immunity to state officials, acting in their official capacity, from suits for monetary damages in federal court. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97–98 (1984). Only two narrow situations limit this principle: (1) when a state expressly consents to suit, see Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996), or (2) when Congress overrides this immunity by exercising its powers under the Fourteenth Amendment, see Kimel v. Florida Bd. of Regents, 528 U.S. 62, 80 (2000).

Here, the State of Vermont has not consented to proceed with this lawsuit. In fact, the State expressly retains its Eleventh Amendment immunity. See 12 V.S.A. § 5601(g) ("Nothing in this chapter waives the rights of the state under the Eleventh Amendment of the United States Constitution.");

13

see also 12 V.S.A. § 5602 (providing that any tort claim against a state employee "shall lie" exclusively "against the state of Vermont"). Nor has Congress abrogated Vermont's immunity through enacting appropriate legislation. See Quern v. Jordan, 440 U.S. 332, 342 (1978) (holding 42 U.S.C. § 1983 does not abrogate States' Eleventh Amendment immunity). The State Defendants' motion to dismiss Buckner's official capacity claims is therefore GRANTED.[2]

### E. Defendant Howard A. Kalfus

The final motion to dismiss is that of Defendant Howard A. Kalfus, sued in his official capacity as a Special Assistant Attorney General for the State of Vermont. (Doc. 42.) The sole factual allegation in the Complaint pertaining to Kalfus is that he "said that [Buckner] was not treated like a criminal by Trooper Erik McNiece." (Doc. 4 at 11.)

Defendant Kalfus first moves for dismissal in his official capacity on the basis of Eleventh Amendment immunity. As set forth above, the Eleventh Amendment bars damages claims brought against state officials sued in federal court in their official capacities. Id. Such claims against Kalfus are therefore DISMISSED.

---

[2] Although the Complaint mentions injunctive relief, the request is non-specific. The Court therefore finds no basis to apply the exception to Eleventh Amendment immunity, pertaining to claims for prospective injunctive relief, set forth in Ex parte Young, 209 U.S. 123 (1908).

14

Kalfus further argues that the facts alleged, even if accepted as true, fail to set forth a plausible cause of action under any of Buckner's various legal theories. For example, Kalfus notes that Buckner brings a claim under the Thirteenth Amendment, and argues that an alleged failure to characterize Buckner as having been "treated like a criminal" did not subject Buckner to "'slavery or involuntary servitude.'" (Doc. 42 at 7) (quoting U.S. Const. amend. XIII, § 1.) The Court agrees. Further, Buckner has failed to allege any facts to support his state law claims, of which only defamation and intentional infliction of emotional distress ("IIED") could conceivably apply. As to defamation, Kalfus is not alleged to have said or published any false or defamatory statement about Buckner. See Ryan v. Herald Assoc. Inc., 152 Vt. 284, 291, 576 A.2d 441, 446 (1990). Nor was his alleged conduct – declining to find Trooper McNiece's conduct criminal – "beyond all bounds of decency" as required for an IIED claim. See Jobin v. McQuillen, 158 Vt. 322, 327, 609 A.2d 990, 993 (1992). The claims against Kalfus are therefore DISMISSED.

II. Buckner's Motion to Amend Complaint

In light of Defendants' arguments for dismissal, Buckner has moved to amend his Complaint to: (1) sue each Defendant in an *individual* as well as official capacity; (2) add criminal

charges; and (3) add factual allegations against the Town of Windsor, Defendants Marsh and Soares, and the VHRC. (Docs. 37, 37-1.) Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "the court should freely give leave [to amend a pleading] when justice so requires." Thus, "[w]hen a party requests leave to amend its complaint, permission generally should be freely granted." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012). However, "[l]eave to amend may properly be denied if the amendment would be futile," id. (citing Foman v. Davis, 371 U.S. 178, 182 (1962)), or "where necessary to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive." Ching v. United States, 298 F.3d 174, 180 (2d Cir. 2002).

Looking first at Buckner's proposal to add criminal charges, the Supreme Court has long held that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Leeke v. Timmerman, 454 U.S. 83, 85 (1981). This portion of the motion to amend is therefore DENIED.

The motion to amend to name the State Defendants in their individual capacities is unopposed, and is therefore GRANTED.

Defendants Marsh and Soares argue the proposed factual allegations against them "would not cure the deficiencies in

the present Complaint." (Doc. 41 at 2-3, n.1.) Those allegations are that the Town of Windsor, with the cooperation of Marsh and Soares, initiated a drug task force investigation, and the investigation was in retaliation for Buckner's filing with the VHRC.

The parties have not fully briefed the question of whether initiation of an investigation, alone, might violate a plaintiff's constitutional rights. The Court notes, however, that at least in the employment context, courts have declined to enter judgment as a matter of law in favor of defendants on such a claim. See, e.g., Everitt v. DeMarco, 714 F. Supp. 2d 122, 134 (D. Conn. 2010) (finding that initiating an investigation against the plaintiff in retaliation for protected speech, by itself, could be an adverse employment action, thereby preventing the court from granting the defendant's motion for summary judgment); but see McInnis v. Town of Weston, 375 F. Supp. 2d 70, 84 (D. Conn. 2005). The Court will therefore allow the amended claims against Marsh and Soares, in their individual capacities, at this time.

Finally, the motion to amend is opposed by Defendant Kalfus. Kalfus argues that suing him in his individual capacity, without further factual allegations, would be futile, since the sole allegation against him is that he "said [Buckner] was not treated like a criminal by Trooper Erik

17

McNiece." (Doc. 4 at 11.) For the reasons discussed previously, this allegation does not support a plausible cause of action under either state or federal law. The motion to amend to add claims against Kalfus is therefore DENIED.

III. Buckner's Motions to Expedite and for Subpoena

Buckner also filed a motion to expedite trial, and a motion for subpoena. (Docs. 5, 6.) As a basis for the motion to expedite, Buckner states: "the above parties should face their alleged crimes in a timely fashion for legal and practical reasons." (Doc. 5 at 2.) Because this case has not yet entered the discovery phase, the motion to expedite trial is DENIED as premature.

The motion to subpoena, submitted under Fed. R. Civ. P. 45, seeks documents from Defendant Appel and the VHRC. (Doc. 6.) To the extent that Appel and the VHRC are parties in this case, a subpoena is not necessary, as information may be sought through document requests under Fed. R. Civ. P. 34. Furthermore, a party generally need not file a motion in order to obtain a subpoena. See Fed. R. Civ. P. 45(a)(2). The motion to subpoena is therefore DENIED.

## Conclusion

For the reasons set forth above, Buckner's motion to expedite (Doc. 5) and motion to subpoena (Doc. 6) are DENIED. Defendants' motions to dismiss (Docs. 12, 15, 36, 42) are

18

GRANTED.  Buckner's motion to amend (Doc. 37) is GRANTED to the extent that all Defendants, with the exception of Defendants Kalfus, Cutting, and Rieseberg, may be named and served in their individual capacities, and Buckner may amend his claims against Defendants Marsh and Soares.  The motion to amend is otherwise DENIED.  All claims against Defendants Kalfus, Cutting, and Rieseberg are DISMISSED.

Plaintiff shall file an amended complaint, consistent with this Opinion and Order, <u>on or before April 5, 2013</u>.

Dated at Brattleboro, in the District of Vermont, this 5th day of March, 2013.

<u>/s/ J. Garvan Murtha</u>
Honorable J. Garvan Murtha
United States District Judge