UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Sean Buckner,                       :
                                    :
          Plaintiff,                :
                                    :
     v.                             :     Case No. 1:12-cv-90-jgm
                                    :
Peter Shumlin, William              :
Sorrell, Keith W. Flynn,            :
Robert D. Ide, Howard A.            :
Kalfus, Robert Appel,               :
Joseph Bahr, Nelson                 :
Campbell, Paul Erlbaum,             :
Tom Marsh, Chief Steven             :
Soares, Erik McNeice,               :
William Jenkins, James              :
Beraldi, Linda Shedd,               :
Richard Slusser, John               :
Zonay,                              :
                                    :
          Defendants.               :

OPINION AND ORDER
(Docs. 46, 61, 64, 65, 72, 73)

     Plaintiff Sean Buckner, proceeding *pro se*, brings this
action claiming he has been the victim of racial profiling,
and that public officials have conspired to violate his
rights.  Pending before the Court are Defendants' motions to
dismiss, as well as two motions filed by Buckner seeking,
among other things, injunctive relief.  For the reasons set
forth below, the motions to dismiss are GRANTED in part,
Buckner's motions are DENIED, and this case is DISMISSED with
leave to amend.

Factual Background[1]

On May 17, 2011, Buckner stopped his vehicle on the shoulder of Interstate 91 due to "an emergency condition." (Doc. 45 at 5.)  Vermont State Trooper Erik McNeice subsequently pulled up behind the vehicle and performed a routine license plate check before exiting his cruiser. Trooper McNeice then requested Buckner's license, registration, and insurance information.  He also asked for identification from Buckner's passenger and inquired as to who owned the car.

Buckner is an African-American male.  His passenger was a white female.  The vehicle had North Carolina license plates. When Trooper McNeice asked for identification, Buckner informed him that he felt uncomfortable, and requested that another officer be present.  Trooper McNeice reportedly told Buckner his behavior – visibly nervous, smoking a freshly-lit cigarette, and asking for another officer to be present – was suspicious.  Trooper McNeice subsequently returned the

---

[1]  For purposes of the pending motions, the facts alleged in the Amended Complaint will be accepted as true.  See Famous Horse Inc. v. 5th Avenue Photo Inc., 624 F.3d 106, 108 (2d Cir. 2010).  Those facts were summarized in the Court's prior Opinion and Order.  (Doc. 44.)  Although Buckner has since amended his Complaint, the factual allegations remain substantially the same.  Accordingly, the Court's previous statement of facts is largely repeated here.

occupants' identification papers and "released" them.  <u>Id.</u> at 13.

Buckner was unable to start his car due to a low battery, and a tow truck was called.  Trooper McNeice contacted his "personal friend," Windsor Police Sergeant James Beraldi, to ask if Sergeant Beraldi had any information about Buckner. <u>Id.</u>  Sergeant Beraldi responded that he knew of Buckner, and allegedly described him as "a crackhead."  <u>Id.</u>  Based upon this information, Trooper McNeice ordered an exterior dog sniff of the vehicle.

Trooper Richard Slusser arrived with a dog and a sniff was conducted.  The dog did not indicate the presence of contraband in the vehicle.  Trooper McNeice issued Buckner a written warning for lack of proof of insurance.

State Police Lieutenant William Jenkins later reviewed the "tape" of Buckner's interactions with Trooper McNeice, and found no wrongdoing by McNeice.  <u>Id.</u> at 14.  Lieutenant Jenkins also informed Buckner he must send in his proof of insurance, and that failure to do so would result in a ticket. Buckner allegedly "told Lieutenant William Jenkins that [he] would not send in proof of insurance and to send [him] the ticket because [he would] use that to take them to court." <u>Id.</u>  Buckner reports he never received the ticket.

Buckner later filed a complaint with the Vermont Human Rights Commission ("VHRC").  VHRC investigator Nelson Campbell interviewed both Buckner and Sergeant Beraldi.  Sergeant Beraldi allegedly told Campbell that he did not have any reason to suspect Buckner of being "a crackhead," and according to the Amended Complaint, the Town of Windsor now denies Sergeant Beraldi ever made such a characterization. Id.[2]

The VHRC ruled against Buckner in a 3-0 vote.  Buckner alleges that prior to the vote, he requested a recording of his interview with Campbell, as well as notes from Campbell's interview of Sergeant Beraldi.  He claims the interview recording was not produced because, according to the VHRC, it was "'either erased or damaged'" when moved from one computer to another.  Id. at 15.

Other state officials, including Vermont Department of Public Safety Commissioner Keith W. Flynn, Vermont Department of Motor Vehicles Commissioner Robert Ide, and Special Assistant Attorney General Howard A. Kalfus have allegedly declined to find that Buckner was "treated like a criminal." Id.  Buckner claims these findings are evidence of "systemic

---

[2]   Elsewhere in the Amended Complaint, Buckner alleges that he received a letter from the Town of Windsor's attorney "stating that the basis of calling [Buckner] a crackhead was not fact but Officer Beraldi's opinion."  Id. at 9.

oppression within the state government," and that he lives in "a state of apartheid in the State of Vermont."  Id. at 5.

Buckner further claims that according to an "unconfirmed rumor," the Windsor Police Department was conspiring with the Vermont State Police immediately prior to the May 2011 incident "to for lack of better words 'get me.'"  Id. at 15. Buckner reported this rumor to Windsor Town Manager Steven Cottrell and Windsor Police Chief Steven Soares who, together with Sergeant Beraldi, allegedly "escorted [Buckner] out as if the complaint was frivolous."  Id. at 16.

Buckner next alleges that he was "physically assaulted by the Town of Windsor on November 10, 2010," and that he was "coerced to do a body search by the Town of Windsor on November 10, 2010."  Id.  It is not clear whether this allegation is related to his other claims, or whether it constitutes an independent claim.  No individual defendants are named in this allegation.

Buckner also complains about an incident involving a traffic stop in January 2008.  While driving home on Interstate 91, he was allegedly stopped by Trooper McNeice for a routine license plate inspection.  Trooper McNeice then arrested Buckner for driving under the influence of alcohol ("DUI").  Buckner contends that his breath alcohol content was .049, while the threshold for a DUI conviction in Vermont is

.08.  Although he was never convicted, Buckner reports "[t]he State of Vermont testified that my prior arrest for DUI was probable cause for further investigating me for illegal activity." Id. at 16.  This latter allegation appears to provide background for Buckner's subsequent interaction with Trooper McNeice in May 2011.

Buckner contends that since filing this case, he has continued to be the subject of "harass[ment]" by State Police and the Windsor Police Department.  Id. at 6.  Specifically, he cites being pulled over by Trooper Slusser on Interstate 89 in September 2012; another stop on Interstate 91 in November 2012; and entry into his home by Windsor police in September 2012, reportedly because they "thought [Buckner] was breaking into the place." Id. at 9.  During the November 2012 traffic stop, Buckner's passenger was allegedly assaulted by a State Police officer.  A complaint was lodged with the State Police internal affairs division, but Buckner "nor [his] passenger has heard anything regarding the investigation." Id. at 10.

The Amended Complaint asserts federal constitutional claims, as well as state law claims such as defamation, slander, assault, and intentional infliction of emotional distress.  Buckner also asks the Court to initiate a Department of Justice investigation, and to declare Vermont's intertate highway rules, "exterior sniff law," and "Fair

housing and Public Accommodations law" unconstitutional.  Id.
at 18.  Other requested relief includes exemplary,
compensatory and statutory damages.

Defendants previously moved to dismiss, and the Court
dismissed all of Buckner's claims against them in their
official capacities.  The Court also granted Buckner leave to
amend his Complaint to add individual capacity claims as to
all Defendants except Defendant Howard Kalfus.  Buckner filed
a timely Amended Complaint, and Defendants again move to
dismiss.

Also pending before the Court are Buckner's "Motion for
Injunctive Order to Refrain from Destroying Evidence and to
Produce Evidence Requested" and "Motion to Enforce."  (Docs.
72, 73).  The first motion seeks the production and/or
preservation of video and audio recordings regarding a traffic
stop by Vermont State Police Officer Christopher Lora.
Officer Lora is not a party in this case.  The "Motion to
Enforce" requests relief against Attorney Christopher Callahan
for his alleged involvement in "facilitating a 'drug task
force' investigation" of Buckner.  (Doc. 73.)  Attorney
Callahan is also not a party.

Discussion

I.   Motions to Dismiss

    A.   Legal Standard

Two motions to dismiss are before the Court.  The first is submitted by Defendants Tom Marsh, Steven Soares, and James Beraldi (collectively the "Town Defendants").  (Doc. 46.)  The second is filed on behalf of Defendants Peter Shumlin, William Sorrell, Keith Flynn, Robert D. Ide, Robert Appel, Joseph Bahr, Nelson Campbell, Erik McNeice, Richard Slusser, William Jenkins and John Zonay (collectively the "State Defendants"). (Doc. 61.)  Both motions seek dismissal under Fed. R. Civ. P. 12(b)(6), asserting failure to state a claim upon which relief may be granted.

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the Complaint as true and draw all reasonable inferences in the plaintiff's favor.  Famous Horse Inc., 624 F.3d at 108.  However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief

8

that is plausible on its face.'" Id. (quoting Twombly, 550
U.S. at 570).

A claim is facially plausible "when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." Id. (citing Twombly, 550 U.S. at 556).  More
specifically, the plaintiff must allege sufficient facts to
show "more than a sheer possibility that a defendant has acted
unlawfully." Id.  If the plaintiff has not "nudged [his]
claims across the line from conceivable to plausible, [the]
complaint must be dismissed." Twombly, 550 U.S. at 570; see
Iqbal, 556 U.S. at 680.

In ruling on a motion to dismiss under Rule 12(b)(6), a
district court must construe a *pro se* complaint liberally, see
Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011), and
interpret the claims as raising the strongest arguments they
suggest.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,
474 (2d Cir. 2006).

B.   Federal Law Claims

The Court has jurisdiction in this case because Buckner
has asserted claims under federal law.  See 28 U.S.C. § 1331.
Before considering any state law claims, the Court will
address the federal claims brought against the Town Defendants
and the State Defendants in turn.

1.   Town Defendants

The Town Defendants first move for dismissal of Buckner's claims asserted under federal criminal statutes.  The criminal statutes cited in the Amended Complaint are 18 U.S.C. § 241; 18 U.S.C. § 242; 18 U.S.C. § 1001; and portions of the Rome Statute of the International Criminal Court.  The Town Defendants argue that Buckner has no right to bring such claims in a civil pleading.

The Supreme Court has long held that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  Leeke v. Timmerman, 454 U.S. 83, 85 (1981).  Moreover, criminal statutes such as those cited in the Amended Complaint do not provide private causes of action.  See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir. 1994) (regarding federal criminal statutes); see also United States v. De La Pava, 268 F.3d 157, 164 (2d Cir. 2001) ("[T]here is a strong presumption against inferring individual rights from international treaties."); Garza v. Lappin, 253 F.3d 918, 924 (7th Cir. 2001) ("[A]s a general rule, international agreements, even those benefitting private parties, do not create private rights enforceable in domestic

courts.").  All claims brought pursuant to criminal statutes
are therefore DISMISSED.[3]

The Town Defendants next move to dismiss Buckner's claims
brought under 42 U.S.C. §§ 3789d and 14141.  Section 3789d
prohibits exclusion from participation in federally-funded
activities, and thus has no application to this case.  Section
14141, which authorizes the Department of Justice to initiate
a civil action against a law enforcement agency, does not
provide a private right of action.  See Rangel v. Reynolds,
607 F. Supp. 2d 911, 925 n.6 (N.D. Ind. 2009); Inkel v. Bush,
2004 WL 2381747, at *3 (D. Conn. Oct. 19, 2004).  Those causes
of action are therefore DISMISSED.

The Town Defendants further argue for dismissal of
Buckner's Thirteenth Amendment claim.  The Thirteenth
Amendment provides that "[n]either slavery nor involuntary
servitude, except as a punishment for crime whereof the party
shall have been duly convicted, shall exist within the United
States, or any place subject to their jurisdiction."  U.S.
Const. amend. XIII, § 1.  In United States v. Kozminski, 487
U.S. 931, 952 (1988), the Supreme Court defined involuntary
servitude as "a condition of servitude in which the victim is
forced to work for the defendant by the use or threat of

---

[3]  The Court notes that it previously denied leave to
amend the criminal claims.  (Doc. 44 at 16.)

11

physical restraint or physical injury, or by the use or threat of coercion through law or the legal process."  In this case, Buckner does not allege any facts suggesting he was subjected to involuntary servitude.  The Thirteenth Amendment claim is therefore DISMISSED.

Buckner also accuses the Town Defendants of helping to initiate a retaliatory investigation.  Specifically, he claims that Town Manager Marsh and Police Chief Soares were involved in the commencement of a drug task force investigation after he filed charges with the VHRC.  The Town Defendants have appropriately interpreted this as a claim under the First Amendment.[4]

"To state a First Amendment retaliation claim, a plaintiff must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech."  Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011).  The U.S. Supreme Court has held that "[o]fficial reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the

---

[4]   In its prior Opinion and Order, the Court invited further briefing on "the question of whether initiation of an investigation, alone, might violate a plaintiff's constitutional rights."  (Doc. 44 at 17.)

12

protected right,' and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." <u>Hartman v. Moore</u>, 547 U.S. 250, 256 (2006) (alteration in original and citations omitted).

The Town Defendants do not dispute Buckner's assertion that his VHRC complaint constituted protected speech. They also concede that a criminal prosecution in retaliation for protected speech would have provided him with a plausible First Amendment claim. In this case, however, Buckner alleges a retaliatory investigation. The Town Defendants argue that an investigation does not give rise to a constitutional claim.

The Second Circuit has not determined whether an investigation can give rise to a First Amendment retaliation claim. In <u>Hartman</u>, the Supreme Court mentioned, but did not resolve, the issue: "No one here claims that simply conducting a retaliatory investigation with a view to promote a prosecution is a constitutional tort. . . . Whether the expense or other adverse consequences of a retaliatory investigation would ever justify recognizing such an investigation as a distinct constitutional violation is not before us." 547 U.S. at 262 n.9. Federal courts in other circuits have determined that a retaliatory investigation does

13

not form the basis of a constitutional claim.  See, e.g.,
Rehberg v. Paulk, 611 F.3d 828, 850 n.24 (11th Cir. 2010)
("The initiation of a criminal investigation in and of itself
does not implicate a federal constitutional right."); Yazid-
Mazin v. McCormick, 2013 WL 5758716, at *4 n.5 (D.N.J. Oct.
24, 2013) ("Simply conducting a retaliatory investigation with
a view to promote a prosecution does not state a claim under §
1983."); Roark v. United States, 2013 WL 1071778, at *5 (D.
Or. Mar. 12, 2013) (denying a motion to amend complaint
because "plaintiff cannot evince the existence of a
constitutional tort based on a retaliatory investigation")
(citing Rehberg, 611 F.3d at 850-51).

        The Town Defendants also assert that, even assuming
Buckner can state a constitutional claim for retaliatory
investigation, they are protected by qualified immunity.  "The
doctrine of qualified immunity protects government officials
'from liability for civil damages insofar as their conduct
does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009)
(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In
determining whether this defense applies, courts often conduct
a two-step analysis, first considering whether there has been
a "violation of a constitutional right," and then considering

                              14

whether the right was "clearly established at the time."
Pearson, 555 U.S. at 232.  "In answering that [second]
question, we look to whether (1) the right was defined with
reasonable clarity, (2) the Supreme Court or the Second
Circuit has confirmed the existence of the right, and (3) a
reasonable defendant would have understood from the existing
law that his conduct was unlawful."  Bailey v. Pataki, 708
F.3d 391, 404-405 (2d Cir. 2013).

Here, the Court finds that qualified immunity bars
Buckner's claim because the law with respect to retaliatory
investigations is not clearly established.  See Pearson, 555
U.S. at 236 (permitting lower court judges to determine "which
of the two prongs of the qualified immunity analysis should be
addressed first"). As discussed above, the U.S. Supreme Court
has explicitly declined to resolve the question, and there is
no Second Circuit authority directly on point.  To the extent
that rulings from other jurisdictions may be instructive, the
cases cited above suggest that merely initiating an
investigation does not constitute First Amendment retaliation.

"Where the defendant seeks qualified immunity, a ruling
on that issue should be made early in the proceedings so that
the costs and expenses of trial are avoided where the defense
is dispositive."  Saucier v. Katz, 533 U.S. 194, 200 (2001),
overruled in part on other grounds by Pearson, 555 U.S. 223.

15

When the defense of qualified immunity is raised as part of a 12(b)(6) motion, a court must decide whether the complaint has plausibly alleged that the government official claiming immunity violated a constitutional right and whether that right was "clearly established" at the time of the alleged misconduct.  Id. at 232.  Here, the Court finds that the law concerning allegedly retaliatory investigations was not clearly established, and accepting the allegations in the Amended Complaint as true, concludes the Town Defendants are entitled to qualified immunity on that claim.  All federal claims against the Town Defendants are therefore DISMISSED.

      2.   State Defendants

   Buckner also brings various federal law claims against the State Defendants.  Those Defendants first argue that all claims brought against Governor Shumlin, Attorney General William Sorrell, Commissioner Keith Flynn of the Vermont Department of Public Safety, and Commissioner Robert Ide of the Department of Motor Vehicles must be dismissed for lack of personal involvement.

   "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  If the defendant is a supervisor, personal involvement must be

16

shown by evidence of direct participation in the challenged conduct, or by evidence of the official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003); see also Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  "The fact that [a defendant] was in a high position of authority is an insufficient basis for the imposition of personal liability."  Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989); see also Back, 365 F.3d at 127; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).

Attorney General Sorrell is named only in the caption of the Amended Complaint.  Absent any substantive allegations against Sorrell, the claims against him are DISMISSED.  See Carrasquillo v. City of New York, 324 F. Supp. 2d 428, 435 (S.D.N.Y. 2004) (dismissing pro se complaint against individual defendants not mentioned in body of complaint).  As to Commissioners Ide and Flynn, Buckner claims that they each

concluded he "was not treated like a criminal by" Trooper
McNiece.  (Doc. 45 at 15.)  Buckner does not allege any
specific federal violations with respect to these claims, and
even construing the Amended Complaint liberally, the Court is
unable to discern a cause of action.  The claims against
Defendants Ide and Flynn are therefore DISMISSED.

     With respect to Governor Shumlin, Buckner claims that
"[t]he [VHRC] authorized and supported the Town of Windsor to
initiate a drug task force investigation.  The State of
Vermont did this willfully and intentionally through Nelson
Campbell under the direction of Robert Appel and Robert Appel
under the direction of Peter Shumlin." Id. at 17.  A fair
reading of this claim is that a VHRC investigator took action
while under the supervision of VHRC Executive Director Appel,
who was in turn appointed by the Governor.  Given this
reading, Governor Shumlin cannot be held liable merely because
he held a position of authority.  Al-Jundi, 885 F.2d at 1065.
Even assuming, for the sake of argument, a claim that Governor
Shumlin actively directed the VHRC Executive Director to
direct his investigator to, in turn, direct the Town of
Windsor to initiate a drug task force investigation, the
allegation is unsupported, conclusory, and implausible, and is
therefore DISMISSED.  See Hayden v. Paterson, 594 F.3d 150,

162 (2d Cir. 2010) (setting aside conclusory allegations made
in intentional discrimination claim).

The State Defendants next argue that Buckner has failed
to state a claim for relief against State Troopers McNeice,
Slusser, Jenkins, and Zonay.  Their first argument is that
Trooper McNeice did not violate Buckner's constitutional
rights while Buckner was broken down on the side of Interstate
91 in May 2011.  As set forth above, the relevant facts are
that while Buckner was broken down, Trooper McNeice asked
Buckner and his passenger for identification, and subsequently
ordered a dog sniff while the car was stationary.

With respect to any potential Fourth Amendment claim, a
Fourth Amendment seizure occurs only when "the officer, by
means of physical force or show of authority, has in some way
restrained the liberty of a citizen."  Florida v. Bostick, 501
U.S. 429, 434 (1991).  "Even when officers have no basis for
suspecting a particular individual, they may generally ask
questions of that individual, ask to examine the individual's
identification, and request consent to search his or her
luggage – so long as the police do not convey a message that
compliance with their requests is required."  Id. at 434-35.

Here, although Buckner claims that McNeice's actions made
him uncomfortable, there is no allegation that McNeice
restrained his liberty.  See United States v. Glover, 957 F.2d

19

1004, 1009 (2d Cir. 1992) (no seizure found where defendant was asked in a non-threatening manner about his travel and identification).  The Amended Complaint states that McNeice asked for identification, noted that Buckner was visibly nervous, and "released [Buckner] to go."  (Doc. 45 at 13.) Nothing in these facts suggests a Fourth Amendment seizure.

As to the subsequent sniff search, the factual allegations do not set forth a constitutional violation.  In Illinois v. Caballes, 543 U.S. 405 (2005), the Supreme Court held that "the use of a well-trained narcotics-detection dog . . . during a lawful traffic stop, generally does not implicate legitimate privacy interests" and thus does not constitute a search for Fourth Amendment purposes.  Id. at 409.  The Supreme Court further held, however, that a traffic stop justified "solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Id. at 407.  That said, "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."  United States v. Harrison, 606 F.3d 42 (2d Cir. 2005) (quoting Arizona v. Johnson, 555 U.S. 323 (2009)).

20

Here, there was no traffic stop.  Buckner's car was broken down, and Trooper McNeice called for a dog sniff. There is no allegation that McNeice "measurably" extended Buckner's time on the side of the road.  Id.  In fact, the Amended Complaint states that Trooper McNeice "released" Buckner prior to the dog sniff.  (Doc. 45 at 13.)[5] Accordingly, even accepting all facts alleged in the Amended Complaint as true, the allegations do not support a claim of either unlawful search or seizure.

It is not clear from the Amended Complaint whether Buckner is alleging Fourth Amendment claims against Defendants Zonay and Jenkins.  Zonay, a Department of Motor Vehicles Inspector who was allegedly called at Buckner's request to observe Trooper McNeice, is claimed to have stated that Buckner appeared nervous.  State Police Lieutenant Jenkins is claimed to have reviewed the video of McNeice's interactions with Buckner and concluded that McNeice did nothing wrong. Jenkins also allegedly required Buckner to provide proof of insurance.  The Court finds these allegations do not support a Fourth Amendment claim.

---

[5]  The only suggestion that Buckner might have been delayed is the claim that "McNeice said the tow truck had arrived but he was still going to do an exterior sniff."  Id. This allegation does not give rise to an inference of a measurable delay.  As set forth below, the Court grants Buckner leave to amend his claim of an unlawful seizure.

The State Defendants also address Buckner's
discrimination claim, brought under the Fourteenth Amendment,
and presumably the Equal Protection Clause.  Buckner claims he
was the victim of racial profiling.  (Doc. 45 at 12.)  More
specifically, he contends that "what I think happened" is that
when Trooper McNeice "saw the race of me and my passenger, he
suspected that we were into illegal activity" and "started his
spontaneous investigation into our personal business."  Id. at
5.

The Equal Protection Clause "is essentially a direction
that all persons similarly situated should be treated alike."
City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432,
439 (1985).  Buckner may pursue an equal protection claim
under a number of theories, including that McNeice treated him
differently than a similarly situated individual as a result
of intentional or purposeful discrimination, or that McNeice
applied a facially-neutral law or policy in an intentionally
discriminatory race-based manner.  Doe v. Vill. of Mamaroneck,
462 F. Supp. 2d 520, 543 (S.D.N.Y. 2006).

While Buckner need not show that he was treated
differently than similarly situated persons, see Pyke v.
Cuomo, 258 F.3d 107, 108–109 (2d Cir. 2001), his
discrimination claim must still plead sufficient facts to
"nudge his claims of invidious discrimination across the line

22

from conceivable to plausible." Iqbal, 556 U.S. at 680; see also id. at 678 ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Indeed, the Amended Complaint must "permit a court to 'infer more than the mere possibility of [discriminatory] misconduct.'" Kajoshaj v. New York Dep't of Educ., 2013 WL 5614113, at *3 (2d Cir. Oct. 15, 2013) (summary order) (quoting Iqbal, 556 U.S. at 679).

Despite alleging "facts consistent with a discrimination claim[,]" Buckner's claim "nevertheless 'stops short of the line between possibility and plausibility of entitlement to relief,' because plaintiff[ ] do[es] not allege any facts supporting an inference of racial animus." Sanders v. Grenadier Realty, Inc., 367 F. App'x 173, 175 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 678). As this Court noted previously, "no court has apparently held that mere knowledge of a person's race, coupled with an arguably excessive response, will suffice." Burwell v. Peyton, 2013 WL 1386290, at *5 (D. Vt. Apr. 4, 2013) (citing Lizardo v. Denny's, Inc., 270 F.3d 94, 102 (2d Cir. 2001) ("Although mistreatment by defendants is not irrelevant in assessing the strength of plaintiffs' circumstantial evidence of race-based animus, it is certainly not sufficient to establish it."); Bishop v. Toys "R" US-NY, LLC, 2009 WL 440434, at *6 (S.D.N.Y. Feb. 19, 2009)

("Hostile conduct may support an inference of discrimination, but is not alone sufficient.")). Indeed, "it is hornbook law that the mere fact that something bad happens to a member of a particular racial group does not, without more, establish that it happened because the person is a member of that racial group." Williams v. Calderoni, 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012); see also Johnson v. City of New York, 669 F. Supp. 2d 444, 450 (S.D.N.Y. 2009) ("The mere fact that plaintiff and defendants are of different races, standing alone, is simply insufficient as a factual pleading to allege racially motivated discrimination[.]").

Buckner concludes that the investigative actions taken by Trooper McNeice were based upon race. However, "[b]ecause the majority of plaintiff's allegations do 'little more than cite to [his] mistreatment and ask the court to conclude that it must have been related to [his] race' . . . the allegations in the complaint do not plausibly give rise to a claim for discriminatory intent." See Garzon v. Jofaz Transp., Inc., 2013 WL 783088, at *3 (E.D.N.Y. Mar. 1, 2013) (quoting Lizardo, 270 F.3d at 104). This claim is therefore DISMISSED, with leave to amend as set forth below.

The State Defendants next address the claims brought against VHRC Executive Director Appel, and VHRC investigator Campbell. The allegations against Campbell pertain to her

24

investigation of Buckner's complaint, and her alleged failure to disclose certain investigative files.  With respect to the investigation, Campbell allegedly suggested that Sergeant Beraldi was unlikely to lie, and declined to include in her report Beraldi's alleged admission that he had no basis for calling Buckner a "crackhead."

The State Defendants submit that Buckner has failed to assert a federal law cause of action against Campbell. Indeed, reading the Amended Complaint liberally, it is difficult to discern such a cause of action aside from general discrimination, which, as discussed above, requires factual support.  See Twombly, 550 U.S. at 570.  Because Buckner offers no such support, the claims against Campbell are DISMISSED.

Buckner also claims that Appel and Campbell "authorized and supported" a drug task force investigation.  (Doc. 45 at 1.)  The State Defendants adopt and incorporate the Town Defendants' arguments on this point, asserting that there is no First Amendment right to be free from investigation.  See, e.g., Rehberg, 611 F.3d at 850 n.24.  The State Defendants also contend that this claim is implausible, as the VHRC has no authority to initiate drug task force investigation.  See 9 V.S.A. § 4551.  The Court agrees on both points (to the extent

qualified immunity applies to the First Amendment claim), and this claim is DISMISSED.

Buckner has also named Joseph Bahr as a Defendant, contending that Bahr, together with Appel and Campbell, "assured" him that he "would receive the interview as well as the interview notes with Windsor Sergeant James Beraldi." (Doc. 45 at 15.)  This claim is not linked to any cause of action, and the Court is unable to identify such a cause, therefore the claim against Defendant Bahr is DISMISSED.

The remaining federal claims against the State Defendants, such as Buckner's citations to criminal statutes and laws authorizing action by the U.S. Attorney General, are without merit for the reasons set forth above in the analysis of the Town Defendants' motion to dismiss.  Moreover, his constitutional challenges to Vermont statutes are unsupported by either facts or legal authority.  Accordingly, Buckner's federal law claims against the State Defendants are DISMISSED.

II.  State Law Claims and Leave to Amend

Given that the Court is dismissing all federal law claims, and there is no allegation of diversity of citizenship, the Court declines to exercise supplemental jurisdiction over Buckner's state law claims in the absence of a viable federal claim.  See 28 U.S.C. § 1367(c) (granting courts discretion with respect to claims brought pursuant to

supplemental jurisdiction when the underlying federal claims are dismissed); see also Matican v. City of New York, 524 F.3d 151, 154-55 (2d Cir. 2008) ("[I]f [plaintiff] has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims."); see also Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").  The instant litigation is still in the early stages, dismissal without prejudice will not inconvenience the parties, and Buckner will be able to re-file his claims in state court.  See 28 U.S.C. § 1367(d) (tolling statute of limitations for thirty days after dismissal unless state law provides for a longer time period).

There remains the matter of leave to amend.  Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "the court should freely give leave [to amend a pleading] when justice so requires."  Where a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Cuoco v. Moritsugu, 222 F.3d 99, 112

27

(2d Cir. 2000) (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." Id. (citation omitted).

Here, many of Buckner's claims are futile, including his claims of criminal violations, his Thirteenth Amendment claim, and his retaliatory investigation claim. As these are the only identifiable federal law claims being brought against the Town Defendants, the Court will not grant leave to amend with respect to those Defendants.

With respect to the State Defendants, Buckner's claims of unconstitutional conduct do not raise plausible causes of action. Nonetheless, his claims of racial profiling and an improper Fourth Amendment seizure of his vehicle by Trooper McNeice may benefit from "better pleading." Id. Accordingly, the Court grants Buckner limited leave to amend only those claims brought against McNeice under the Fourth and Fourteenth Amendments. If plaintiff amends to successfully allege a timely and plausible federal cause of action, the Court will entertain plaintiff's state law claims at that time. Conversely, if plaintiff fails to state a viable federal claim, the Court will continue to decline supplemental jurisdiction over the state law claims. Accordingly, the

Defendants' motions to dismiss Buckner's state law claims are denied without prejudice and may be renewed if Buckner amends to adequately plead a plausible federal cause of action.  See, e.g., Clement v. United Homes, LLC, 914 F. Supp. 2d 362, 377 (E.D.N.Y. 2012).

III.  Buckner's Motions

Buckner has filed two motions for injunctive relief.  The first (Doc. 72) asks the Court to order the preservation of records pertaining alleged misconduct by Vermont State Trooper Christopher Lora.  Trooper Lora is not currently a party in this case, therefore the Court has no jurisdiction to order such relief.  See Fed. R. Civ. P. 65(d)(2) ("Every order granting an injunction . . . binds only . . . the parties . . . ."); United States v. Regan, 858 F.2d 115, 120 (1988) (discussing the "proposition [, supported by both statute and case law] that a court generally may not issue an [injunctive] order against a nonparty.").  Moreover, the State Defendants have confirmed their commitment and obligation to preserve materials in their possession under Fed. R. Civ. P. 26.  (Doc. 75 at 2.)

Buckner also asks the Court to order injunctive relief against Attorney Christopher Callahan.  (Doc. 73.)  Attorney Callahan is alleged to have been counsel for the Town of Windsor, and to have been involved in ordering a drug task

29

force investigation.  Like Trooper Lora, Attorney Callahan is not currently a party to this case.  Accordingly, no such relief will be ordered.

<u>Conclusion</u>

For the reasons stated herein, Defendants' motions to dismiss (Docs. 46, 61, 64 and 65)[6] are GRANTED with respect to all federal law claims, and DENIED without prejudice as to Buckner's state law claims.  Buckner's pending motions (Docs. 72 and 73) are DENIED.  Buckner may file a Second Amended Complaint, pursuant to the limitations set forth above, within 30 days of this Opinion and Order.  Failure to file a timely Amended Complaint by January 13, 2014 will result in the dismissal of all federal claims with prejudice, and all state law claims without prejudice.

Dated at Brattleboro, in the District of Vermont, this 13th day of December, 2013.


/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge

_____

[6]  Documents 64 and 65 move for dismissal of an Amended Complaint (Doc. 63) filed on June 21, 2013 without leave of the Court.  There is no substantive difference between that Amended Complaint and its predecessor (Doc. 45).  Accordingly, these motions to dismiss are also GRANTED.